IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DANIEL P. OSWALD,

                            Plaintiff,                      OPINION AND ORDER

v.

                                                          15-cv-291-wmc

WILLIAM POLLARD, *et al.*,

                            Defendants.

*Pro se* plaintiff Daniel P. Oswald is proceeding in this lawsuit against defendants Jeremy Brockman, Christine Deyoung, Jeffrey Manlove, Michael Charles, Leslie Baird, and Belinda Schrubbe on Eighth Amendment and state negligence law claims related to allegedly inadequate medical treatment received in 2014 while incarcerated at Waupun Correctional Institution ("Waupun"). Oswald is also proceeding against the Wisconsin Department of Corrections ("DOC") on ADA and Rehabilitation Act claims related to an alleged denial of an elevator pass and wheelchair.

Now before the court are: defendants' motion for partial summary judgment on exhaustion grounds (dkt. #38), and plaintiff's motions for a preliminary injunction (dkt. #44), assistance in recruiting counsel (dkt. #52), for inspection of defendants' employment records (dkt. #58) and to compel a response to his discovery requests (dkt. #60). For the following reasons, the court will grant defendant's and deny plaintiff's motions.

I.   **Partial exhaustion motion (dkt. #38)**

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally speaking, a prisoner must "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (prison staff need notice of a problem and an opportunity to address it). If a prisoner fails to exhaust his administrative remedies before filing a lawsuit, then the court *must* dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing plaintiff's failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

To exhaust state administrative remedies before the DOC, inmates must follow the inmate complaint review process set forth in the Wis. Admin. Code Ch. DOC 310. Under these provisions, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the

complaint. Wis. Admin. Code § DOC 310.09(6). Each complaint must "[c]ontain only one issue . . . and shall clearly identify th[at] issue." *Id.* § 310.09(e). If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal that rejection. *Id.* § 310.11(6). If the complaint is not rejected, the institution examiner makes a recommendation on the merits of the complaint to the reviewing authority. *Id.* § 310.11(6). The offender complaint is then decided by the appropriate reviewing authority, whose decision can be appealed by the inmate to the correctional complaint examiner (corrections examiner). *Id.* §§ 310.12, 310.13. The corrections examiner then makes a recommendation to the Secretary of the Department of Corrections, who takes final action. *Id.* §§ 310.13, 310.14.

Defendants seek judgment as to Oswald's claims against Dr. Manlove, as well as his ADA and Rehabilitation Act claim about access to a wheelchair, for failure to exhaust, asserting that Oswald never filed a complaint against Dr. Manlove or with respect to being denied access to a wheelchair. In their motion, defendants acknowledge that Oswald filed multiple complaints about medical care, which involve numerous medical care providers at Waupun Correctional Institution, but he never specifically complained about Dr. Manlove. Indeed, the inmate complaint records indicate that in 2014, Oswald filed 22 inmate complaints against various staff at Waupun, but none of those complaints mention Manlove's mistreatment. (Ex. 1000 (dkt. #40-1).) Further, although Oswald filed inmate complaints related to the denial of an elevator pass (*id.* at 1), he *never* filed one related to access to a wheelchair. On the contrary, Oswald actually filed a grievance in August of 2014, WCI-2014-18326 where he complained that staff required him to participate in

physical therapy *despite* being in serious pain and *having been in a wheelchair*. In short, Oswald's complaint was not being denied access to a wheelchair, but rather about having to participate in physical therapy. (Ex. 1001 (dkt. #40-2) at 10.)

In his opposition, Oswald acknowledged *never* filing an inmate complaint that neither named Dr. Manlove or complained about the lack of access to a wheelchair. Nor for that matter, does Oswald assert that any prison staff prevented him from pursuing an inmate complaint about these two issues. Instead, Oswald offers different reasons for failing to file an inmate complaint: (1) he was not aware of the extent of the physical damage sustained from his July 2014 fall until a spine specialist examined him on August 1, 2014, and told him that he should use a wheelchair; (2) for a month after the fall, he was told that the stiffness and pain would go away; and (3) for a month starting August 5, 2014, he was placed in a wheelchair and "basically rendered bedridden" because of the pain he was in. Ultimately, all of these excuses are unavailing.

Taking them in reverse order, Oswald's third numbered excuse is belied by the record, which shows Oswald repeatedly used the inmate complaint system during that same timeframe he claims to be physically unable to do so. Specifically, in July and August of 2014, while "bedridden," Oswald managed to file five other inmate complaints. Further, in September of 2014, Oswald submitted three more complaints about the medical treatment he was receiving. (Ex. 1000 (dkt. #40-1) at 1.) To the extent Oswald is arguing in his other two numbered excuses that he did not file inmate complaints in July or August of 2014 because he believed he would get better soon and only realized he would not after missing a 14-day DOC deadline for filing a complaint, Oswald offers *no* explanation for not

even *attempting* to pursue those grievances within 14 days of realizing that earlier, rosy prognoses were inaccurate. Unfortunately for Oswald, even assuming that he genuinely misunderstood the deadlines for filing his inmate complaints (since he still could have submitted a complaint within 14 days of when he claims to have realized his long-term prognosis was not good at the end of August), that misapprehension is no excuse to circumvent the exhaustion requirement. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) ("There is no futility exception to § 1997e(a)."); *see Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001) (rejecting futility and substantial compliance arguments due to the breadth of the PLRA's exhaustion requirement). Of course, Oswald's delay in complaining about being denied use of a wheelchair has *no* rational explanation, other than that he was willing to put up with it for a short period, which was *still* a conscious choice at the time. Regardless, since the record suggests that Oswald could have at least *attempted* to pursue his inmate complaints related to Manlove and wheelchair access, but failed to do so, he did not exhaust those claims and they are now both barred on exhaustion grounds.

Finally, Oswald suggests that the court could stay these proceedings to permit Oswald to exhaust, but such a stay would now be fruitless since there is no question that Oswald failed to file inmate complaints on these subjects within 14 days of knowing about them. Accordingly, the court is granting defendants' motion, and Oswald's claims against Dr. Manlove will be dismissed, as will his ADA/Rehabilitation Act claim against the DOC related to access to a wheelchair.[1]

---

[1] Oswald also filed a motion asking the court to deny defendants' request for partial summary judgment because defendants' reply was filed late. (Dkt. #38.) Specifically, Oswald complains that

## II. Motion for preliminary injunction (dkt. #44)

In his preliminary injunction motion, Oswald explains that he suffers from Post Traumatic Stress Disorder ("PTSD") that causes him to urinate in his sleep. As such, he is requesting an injunction requiring defendants to: (1) place him in a single cell at Kettle Moraine Correctional Institution ("Kettle Moraine"), where he is currently incarcerated; (2) place him on a transfer list to the Wisconsin Resource Center ("WRC") for evaluation for the PTSD program there; (3) place him in a single cell at the WRC, either permanently or until this lawsuit concludes; (4) provide him with a special medical need restriction for adult diapers, clean linens as needed and access to a secondary set of linens at all times; and (5) permit Oswald to shower when he has retention issues as a result of his PTSD. Unfortunately, the claims plaintiff is pursuing in this lawsuit are unlikely to yield the kind of immediate or permanent relief he seeks.

To obtain injunctive relief, any party must show that: (1) he will suffer *irreparable* harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claims has some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). Upon making this showing, he must further demonstrate that the balance of harms tips in his favor and that the public interest favors the injunctive relief. *Id.* As formidable as these factors are for a typical party to prove, the Prison Litigation Reform Act limits even further the scope of preliminary injunctive relief in cases challenging prison conditions.

---

defendants filed their reply brief more than seven days after he filed his opposition brief, which Oswald filed prior to the court-imposed deadline. However, defendants' reply was filed on the deadline set by the court: August 28, 2017. As such, Oswald's motion will be denied.

Under the PLRA, any injunctive relief to remedy prison conditions must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012). The PLRA also requires this court to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." § 3626.

Defendants oppose plaintiff's preliminary injunction motion on the basis that the relief he is seeking is unrelated to his claims against the defendants in this lawsuit. The court reluctantly agrees. Plaintiff's conditions of confinement claim in this lawsuit relates solely to defendants Schrubbe, DeYoung, Callister, Baird, Gregg and Charles alleged awareness that in *2014,* Oswald spent "several days with urine-soaked clothes and linens and without access to a shower" at DOC's Waupun facility, and defendants failed to take any steps to address those conditions. (Order (dkt. #28) at 11-12.). In contrast, Oswald's pending request for a preliminary injunction relates to his *current* conditions of confinement, and he does not even include the names of any individuals that have been involved in handling his placement *at Kettle Moraine*. As such, no member of the Kettle Moraine staff has even received formal notice of Oswald's complaints about his claimed mistreatment or his current conditions there.

While Oswald argues that this court can address his request because the DOC is a party, Oswald was only granted leave to proceed against the DOC with respect to his ADA/Rehabilitation Act claims related to his allegation of denial of wheelchair access and

7

elevator pass, not on any claims requesting injunctive relief for his PTSD. Under these circumstances, there are *no* alleged claims that would support the specific injunctive relief plaintiff seeks. While Oswald might seek leave to amend his complaint again, that would almost certainly be denied here because the events outlined in Oswald's amended complaint took place in 2014 and early 2015, and his current claims are ongoing. *See* Fed. R. Civ. P. 20 (permitting defendants to be joined in one action where the right to relief arises "out of the same transaction, occurrence or series of transactions or occurrences"); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Accordingly, this lawsuit is not the proper avenue for Oswald to obtain his requested relief.

While Oswald cannot pursue his request for injunctive relief in *this* lawsuit, he is not without recourse. Indeed, he should begin by working with the staff at Kettle Moraine to try to obtain the treatment and accommodations he claims are to address his bouts with PTSD. If he is ultimately unsatisfied with their response, and still believes his constitutional rights are being violated at Kettle Moraine, he must first seek relief through the institution's grievance process, and failing that, initiate a new lawsuit, including moving for a preliminary injunction subject to the constraints of the PLRA.

### III. Discovery Motions (dkts. #58, #60)

Oswald also has two discovery-related motions pending before the court, which will be denied at this time. In his first motion, Oswald is requesting an *in camera* inspection of defendants' employment and personnel files, and in particular, those records related to the grievances filed against each of the defendants. Even more specifically, he is asking the

court to conduct an *in camera* review of defendants' files to determine whether other inmates have complained about these issues on the same type of conduct that Oswald complains about in this lawsuit. Defendants oppose the motion on the ground that Oswald has not attempted to resolve this issue with them directly, and that regardless, Oswald's request did not sufficiently specify whether he is seeking defendants' employment records or inmate complaints. In Oswald's reply, he clarifies that he is asking defendants to produce DOC's "employment records," including complaints and grievances. Oswald explains that he is pursuing these documents because he believes that one or more of the defendants have a history of deliberate indifference.

Oswald's response should sufficiently clarify to defendants what Oswald is seeking, such that defendants should be able to respond to Oswald's request. For that reason, the court will deny Oswald's motion, but do so *without prejudice* to his ability to renew his motion should the facts later justify it. That said, before Oswald renews any discovery-related motion in this lawsuit, he is reminded of his obligation under Federal Rule of Civil Procedures 37(a)(1) to meet and confer (by telephone if necessary) with defendants in a good faith attempt to resolve plaintiff's discovery requests informally. The court likely will deny any future discovery-related motion that does not set forth the efforts Oswald has taken to informally resolve said dispute.

In his more recent motion, Oswald also seeks an order compelling defendants to produce emails that were the subject of a discovery request. Defendants have responded that they are in the process of producing those emails, and further indicate that they planned to produce those emails by Thursday December 21, 2017. Oswald has not

9

indicated that defendants subsequently failed to produce those emails, so the court will deny this motion as well, again without prejudice to possible renewal, but for now it appears to be moot.

IV. **Motion for assistance in recruiting counsel (dkts. ##52, 57)**

Finally, the court previously denied two requests by Oswald for assistance in recruiting counsel without prejudice, explaining most recently that his filings suggest that he not only understands the relevant legal and factual issues involved in this case, but the ability to express himself persuasively. Moreover, it was still too early for the court to determine whether recruitment of counsel may be appropriate should Oswald's claims survive summary judgment. In his renewed motions, Oswald argues that (1) he cannot afford to hire counsel; (2) this case may require expert testimony from a medical doctor or psychologist; and (3) he does not have sufficient knowledge of the law to address the complex issues in this lawsuit.

As Oswald knows full well by now, there is no right to counsel in civil cases. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Rather, a party who wants court assistance recruiting counsel must meet several requirements. *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010). Oswald has established both that he is unable to afford counsel and that he has made reasonable efforts to find a lawyer on his own but has been unsuccessful. Even so, it is still not apparent that this is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds the plaintiff's ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

This lawsuit is about whether the defendants were deliberately indifferent and/or negligent to: (1) the possibility that Oswald might fall; (2) Oswald's serious medical needs; (3) the conditions in which Oswald was living; and (4) whether the DOC violated Oswald's rights under the ADA and Rehabilitation Act in failing to provide him with an elevator pass. Dispositive motions are now due March 2, 2018. If defendants move for summary judgment, Oswald's responsibility is to respond in accordance with the Federal Rules of Civil Procedure and this court's procedures for responding to motions for summary judgment. Not only has, Oswald not established that he is incapable of handling this task without the help of an attorney, he has continued to demonstrate the ability to do so. For one, Oswald's filings illustrate his ability to advocate for himself because he consistently writes articulately, and he cites to relevant and persuasive authority. While he may not have succeeded on all of his arguments, that does not suggest that he needs counsel at this stage. That said, once the parties submit their summary judgment materials, the court will, if necessary, *sua sponte* recruit counsel on Oswald's behalf if it becomes apparent that the legal and factual difficulties of this case exceed Oswald's ability to litigate it without an attorney, or that it is apparent expert testimony will be necessary for Oswald to meet his burden. As such, the court will once more deny Oswald's motions without prejudice.

ORDER

IT IS ORDERED that:

1) Defendants' Motion for Partial Summary Judgment (dkt. #38) is GRANTED.

2) Plaintiff's motion to deny defendants' motion for partial summary judgment (dkt. #48) is DENIED.

3) Plaintiff's Motion for Preliminary Injunction (dkt. #44) is DENIED.

4) Plaintiff's motions for assistance in recruiting counsel (dkts. ##52, 57) are DENIED.

5) Plaintiff's motions for in camera inspection and to compel (dkts. ##58, 60) are DENIED without prejudice.

Entered this 26th day of January, 2018.

                BY THE COURT:

                /s/
                _____
                WILLIAM M. CONLEY
                District Judge